IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-00027-MSK-MEH

R. KIRK MCDONALD,

    Plaintiff,

v.

NATIONWIDE TITLE CLEARING, INC., and
ERIKA LANCE, individually and in her official capacity as employee/supervisor for Nationwide Title Clearing, Inc.,

    Defendants.

---

# RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge.**

Before the Court is Defendants' Motion to Dismiss [filed July 7, 2015; docket #57]. Pursuant to 28 U.S.C. § 636(b)(1)(B) and D.C. Colo. LCivR 72.1(c), the Motion has been referred to this Court for recommendation. (Docket #61.) The Court finds that oral argument would not materially assist in the adjudication of the motion. For the reasons that follow, this Court respectfully recommends that Defendants' Motion be **granted**.[1]

---

[1] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

**BACKGROUND**

Plaintiff initiated this lawsuit as a *pro se* litigant, and pursuant to the Court's order during initial review, Plaintiff filed the operative Amended Complaint on February 3, 2015. (Docket #7.)

**I.     Statement of Facts**

The following are factual allegations (as opposed to legal conclusions, bare assertions, or merely conclusory allegations) made by the Plaintiff in his Complaint, which are taken as true for analysis under Fed. R. Civ. P. 12(b)(1) pursuant to *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995) and under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

This action arises from an alleged conspiracy "to forge, counterfeit, and record a fraudulent conveyance document." (*Id.* at ¶ 3.) In 2012, Plaintiff filed a separate action against J.P. Morgan Chase Bank, Citibank, and Chase Funding Mortgage Loan Asset Backed Certificate 2002-4, alleging that Citibank lacked standing to commence foreclosure proceedings on his property. *McDonald v. J.P. Morgan Chase Bank, N.A.*, No. 12-cv-02749-MSK-MEH, 2014 WL 334813 (D. Colo. Jan. 30, 2014). In that case, Chief District Judge Marcia S. Krieger dismissed the majority of Plaintiff's claims and ruled for Defendant on summary judgment regarding the remaining claims. *McDonald v. J.P. Morgan Chase Bank, N.A.*, No. 12-cv-02749-MSK-MEH, 2015 WL 1403419 (D. Colo. Mar. 23, 2015). Because the 2012 action was based on many of the same factual allegations contained in the Amended Complaint in this case, the Court incorporates the following facts from one of Chief Judge Krieger's orders in that case:

> At some point in the early 2000s, Mr. McDonald took out a loan from Defendant J.P. Morgan Chase Bank ("Chase") to purchase (or perhaps refinance an existing loan on) real property located in Littleton, Colorado. The repayment of the note was secured by lien reflected in a Deed of Trust recorded against such property. At some point, Chase purportedly assigned the note to Defendant Citibank, or to the Defendant ... Certificate 2002-4 (Mr. McDonald is of the belief that no such assignment(s) occurred, or that he was given insufficient notice of them.) By September 2012, Mr.

>McDonald had fallen into default on that loan, and Citibank commenced foreclosure proceedings on the property.
>
>Mr. McDonald apparently sought to refinance the loan through governmental foreclosure relief services, but was unsuccessful. He contends, in part, that this was due to Defendants' refusal to disclose the actual holder of the note. Although Mr. McDonald sought to enjoin the foreclosure proceedings in both state and federal courts, his requests were denied, and the property was sold at a public trustee foreclosure sale to Citibank.

*McDonald* 2014 WL 334813, at *1-2 (ellipsis in original). On March 25, 2013, the Colorado Arapahoe County District Court confirmed the Public Trustee's sale of Plaintiff's property. *Id.* at *6.

The Amended Complaint in the current case involves the same property at issue in the previous case. Plaintiff alleges that Defendants – Nationwide Title Clearing Inc. ("NTC"), a Florida corporation, and Erika Lance, an NTC employee and Florida resident – "forged and counterfeited spurious conveyance lien documents for McDonald's real property."[2] (Docket #7, ¶ 4.) Plaintiff alleges that the loan assignment from Chase to Citibank was fraudulent because it did not comply with a pooling and servicing agreement ("PSA") between the banks. (*Id.* at ¶ 5). Plaintiff alleges that Defendants recorded the fraudulent loan assignment documents with the Arapahoe County Clerk and Recorder's Office. (*Id.* at ¶ 4.) Plaintiff indicates that NTC paid the Arapahoe County Clerk and Recorder $11.00 for recording fees on April 16, 2012. (*Id.* at ¶ 4). Plaintiff alleges that NTC billed JP Morgan Chase for the cost of the recording fee. (*Id.* At ¶ 4.) As relief, Plaintiff

---

[2]Plaintiff has filed multiple cases in state and federal court regarding the foreclosure of the property at issue in this case. Plaintiff's Amended Complaint alleges a significant number of facts not related to the alleged spurious conveyance lien documents created by Defendants. These facts include the circumstances under which Citibank foreclosed on Plaintiff's property, which were addressed in Plaintiff's prior cases. Plaintiff also uses a large portion of the Amended Complaint to assert that the loan assignment from Chase to Citibank was fraudulent. However, because Plaintiff only brings one claim in this lawsuit – a request for an order to show cause and a subsequent hearing under Colo. Rev. Stat. § 38-35-204 – the Court need only focus on Defendants' actions in allegedly creating and filing the spurious conveyance lien documents. The additional facts are not material to the Court's analysis.

requests that the Court issue an order to show cause pursuant to Colo. Rev. Stat. § 38-35-204 requiring Defendants to appear in this Court to "show cause why its lien and documents created on April 6, 2012, 'Corporate Assignment of Deed of Trust' and recorded on April 26, 2012 in Arapahoe County, Colorado by NTC for JP Morgan Chase, Citibank N.A. and Chase Funding Mortgage Loan Asset-Backed Certificates, Series 2002-4 should not be declared invalid." (*Id.* at ¶ 2.)

## II.     Procedural History

Defendants responded to Plaintiff's Amended Complaint by filing an Answer on March 27, 2015. (Docket #23). Thereafter, Defendants filed the present Motion to Dismiss on July 7, 2015, claiming that Plaintiff's Amended Complaint should be dismissed pursuant to Fed. R. Civ. P 12(b)(1) because the Court lacks subject matter jurisdiction to proceed, and under Fed. R. Civ. P. 12(c) because Plaintiff has no standing to bring this claim. (Docket #57 at 2.)

Plaintiff filed his Response on July 30, 2015, asserting that the Court has both diversity and federal question jurisdiction over his claim. (Docket #74, ¶¶ 33-35.) Plaintiff's Response did not address the standing argument raised by Defendants. (*Id.*) Defendants filed a Reply on August 13, 2015, claiming that the Court lacks diversity and federal question jurisdiction over Plaintiff's claim. (Docket #75 at 2.) Plaintiff requested the Court allow a Surreply, which was granted and that he then filed on August 20, 2015, reasserting his argument that the Court has both diversity and federal question jurisdiction over his claim. (Docket #79, ¶1.)

## LEGAL STANDARDS

### I.     Dismissal under Fed. R. Civ. P. 12(b)(1)

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of subject matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. *See Pueblo of Jemez v. United States*, 790 F.3d 1143, 1151 (10th Cir. 2015) (recognizing

4

federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). A court lacking jurisdiction "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." *Id.* (citing *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1016 (10th Cir. 2013)). A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere [conclusory] allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *Pueblo of Jemez*, 790 F.3d at 1151. Accordingly, Plaintiff in this case bears the burden of establishing that this Court has jurisdiction to hear his claims.

Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).

> First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true.
>
> Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

*Id.* at 1002-03 (citations omitted). The present motion launches a facial attack on this Court's subject matter jurisdiction; therefore, the Court will accept the truthfulness of the Complaint's factual allegations.

## II.     Dismissal under Fed. R. Civ. P. Rule 12(c)

A motion for judgment on the pleadings must be evaluated using the same standard for motions under Rule 12(b)(6). *Brown v. Montoya*, 662 F.3d 1152, 1160 n.4 (10th Cir. 2011). The principal difference is that a 12(c) motion is typically filed after the filing of an answer which

5

asserted a failure to state a claim under Rule 12(b)(6). *Id.*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

The Rule 12(b)(6) evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id*. at 678–80. Second, the court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 679. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678.

The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id*. (quotations and citations omitted).

6

### III.     Dismissal of a *Pro Se* Plaintiff's Complaint

A federal court must construe a *pro se* plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted). The Tenth Circuit interpreted this rule to mean, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)). A dismissal "without affording the plaintiff notice or an opportunity to amend is proper only 'when it is patently obvious that plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile.'" *Curley v. Perry*, 246 F.3d 1278, 1281–82 (10th Cir. 2001) (quoting *Hall*, 935 F.2d at 1110 (additional quotation marks omitted)).

## ANALYSIS

When a case is subject to dismissal under Rule 12(b)(1) and 12(c) in the alternative, the court must decide first the 12(b)(1) motion, for the 12(c) challenge "would be moot if the court lacked subject matter jurisdiction." *See Mounkes v. Conklin,* 922 F. Supp. 1501, 1506 (D. Kan. 1996) (citing *Moir v. Greater Cleveland Reg'l Transit Auth.,* 895 F.2d 266, 269 (6th Cir. 1990)).

### I.     Subject Matter Jurisdiction

Defendants argue that the Court lacks subject matter jurisdiction for three reasons: (1) the

7

Court lacks diversity jurisdiction over Plaintiff's claim, (2) the Court lacks federal question jurisdiction over Plaintiff's claim, and (3) the *Rooker-Feldman* doctrine bars this Court from considering Plaintiff's claim. The Court addresses each argument in turn.

    A.    <u>Diversity Jurisdiction</u>

Diversity jurisdiction requires both complete diversity of the parties and an amount in controversy in excess of $75,000. 28 U.S.C.A. § 1332(a). Complete diversity means "no plaintiff may be the citizen of a state of which any defendant is also a citizen." *Cameron v. State Farm Mut. Auto Ins. Co.*, No. 10-cv-00699-PAB, 2010 WL 1413174, at *3 (D. Colo. Apr. 2, 2010) (internal citation omitted). For individuals, "state citizenship is the equivalent of domicile." *Crowley v. Glaze*, 710 F.2d 676, 678 (10th Cir. 1983). "A corporation, however, is deemed to be a citizen of any [s]tate in which it has been incorporated and, if different, the state in which it has its principal place of business." *Powers v. Allstate Motor & Cas. Ins. Co.*, No. 10-cv-00977-WYD-KLM, 2010 WL 2270182, at *1 (D. Colo. June 7, 2010) (citing 28 U.S.C. § 1332(c)(1)). When determining the amount in controversy, "the amount claimed by the plaintiff controls if the claim is apparently made in good faith." *Adams v. Reliance Standard Life Ins. Co.*, 225 F.3d 1179, 1183 (10th Cir. 2000). A plaintiff's complaint must allege sufficient facts "to convince the district court that recoverable damages will bear a reasonable relation to the minimum jurisdictional floor." *Id.* (quotations and citations omitted). The complaint cannot establish the requisite amount in controversy if the only relief requested is an order to show cause and subsequent hearing pursuant to Colo. Rev. Stat. § 38-35-204. *See Beaver Mountain Ranch West, LLC v. Graves*, No. 07-cv-02497-WYD-BNB, 2008 WL 686782 at *2 (D. Colo. Mar. 10, 2008) (noting that because the allegations of the complaint did not show that the amount in controversy exceeded $75,000, and that the only relief that the state court complaint sought was an order to show cause and a subsequent hearing pursuant to Colo. Rev. Stat. § 38-35-204, the case must be remanded).

In this case, Plaintiff is a citizen of Colorado, where he is domiciled. Both Defendants are citizens of Florida. NTC is incorporated in Florida and Defendant employee Erika Lance is domiciled in Florida. Therefore, complete diversity of citizenship exists, because Plaintiff is a citizen of a different state than either of the Defendants.

The only relief requested in Plaintiff's Amended Complaint is an order to show cause and subsequent hearing pursuant to Colo. Rev. Stat. § 38-35-204. As explained in *Beaver Mountain Ranch West*, a request for an order to show cause is not sufficient to establish the requisite amount in controversy. Plaintiff argues that his property was valued at more than $75,000. (Docket #74, ¶ 33). However, this assertion does not demonstrate that Plaintiff's claim exceeds the jurisdictional amount. The alleged spurious lien was placed on Plaintiff's property before Citibank foreclosed on the property, and Plaintiff offers no facts showing that Defendants' actions created any additional encumbrance on his property. The assignment recorded by Defendants on April 26, 2012, merely transferred the existing mortgage on Plaintiff's property from Chase to Citibank, and Plaintiff has not demonstrated any monetary damages as a result of this transfer. Therefore, because Plaintiff has not asserted sufficient facts to demonstrate the amount in controversy required, the Court does not have diversity jurisdiction over his claim.

B.     Federal Question Jurisdiction

Federal question jurisdiction is defined by 28 U.S.C. § 1331, which provides that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." For a court to have jurisdiction under 28 U.S.C. § 1331 "two conditions must be satisfied. First, a question of federal law must appear on the face of plaintiff's well-pleaded complaint. Second, plaintiff's cause of action must either be (1) created by federal law, or (2) if it is a state-created cause of action, its resolution must necessarily turn on a substantial question of federal law." *Nicodemus v. Union Pac. Corp.*, 381 F.3d 1231, 1235 (10th Cir. 2003)

(quotations and citations omitted).

Plaintiff brings only one claim against Defendants, under Colo. Rev. Stat. § 38-35-204, Colorado's spurious lien statute. Plaintiff argues that federal question jurisdiction exists because Defendants' conduct violated both federal and state law. (Docket # 74, ¶ 35). However, even if Defendants' conduct violated federal law, Plaintiff's only claim in his Amended Complaint is pursuant to state law, not federal law. Because Plaintiff requested relief only under state law, no question of federal law appears on the face of Plaintiff's Amended Complaint. Additionally, Plaintiff has alleged no facts demonstrating that resolution of his state law claim turns on a substantial question of federal law. Therefore, the Court does not have federal question jurisdiction over Plaintiff's claim.

C. *Rooker-Feldman* Doctrine

Additionally, Defendants argue that if Plaintiff's claim is an attempt to collaterally attack the completed foreclosure sale of his property, the Court should dismiss Plaintiff's claim under the *Rooker-Feldman* doctrine.[3]

If state court proceedings have been concluded, federal courts are barred from reviewing any judgments of the state court by the *Rooker-Feldman* doctrine. The *Rooker-Feldman* doctrine is a jurisdictional prohibition based on 28 U.S.C. § 1257, which limits federal review of state court judgments to the United States Supreme Court. *See Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923); *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *see also Johnson v. DeGrandy*, 512 U.S. 997, 1005-06 (1994) (holding that the *Rooker-Feldman* doctrine bars "what in substance would be appellate review of the state judgment in a United States district court"). The

---

[3] Defendants raise their *Rooker-Feldman* argument tangentially, noting that the doctrine would apply only if Plaintiff is using this claim to collaterally attack the foreclosure on his property. (Docket #57, at 11.) However, because the Defendant raises *Rooker-Feldman*, and the Plaintiff responds to it extensively [docket #74, ¶¶ 23-28], the Court addresses the issue here.

*Rooker-Feldman* doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The Tenth Circuit in *Dillard v. Bank of New York*, 476 Fed.Appx. 690, 691-92 (10th Cir. 2012) made clear that *Rooker-Feldman* bars claims where a plaintiff seeks to reverse state court foreclosure and eviction proceedings that were finalized before the commencement of a federal lawsuit.

Here, the Arapahoe County District Court confirmed the Public Trustee's sale of Plaintiff's property on March 25, 2013. This action by the state court represents a final foreclosure proceeding that may be reviewed by this Court.[4] Therefore, Defendants are correct in asserting that if the actual purpose of Plaintiff's suit is to collaterally attack the completed foreclosure sale of his property, this Court lacks jurisdiction to hear the Plaintiff's claim under the *Rooker-Feldman* doctrine.

## II.     Judgment on the Pleadings

Should the District Court disagree and determine the Court has jurisdiction to hear Plaintiff's claim, the Court will proceed with a Rule 12(c) analysis. Defendants argue that Plaintiff's claim should be dismissed for failure to state a probable claim for relief, because Plaintiff does not have standing to (1) bring a claim under Colorado's spurious lien statute, or (2) challenge the assignment between Chase and Citibank.

A plain text reading of Colo. Rev. Stat. § 38-35-204(1) provides standing only to a "person

---

[4]The Amended Complaint references Plaintiff's other ongoing legal proceedings but does not indicate whether he has appealed the Arapahoe County District Court's confirmation of the Public Trustee's sale on March 24, 2013. If Plaintiff is pursuing an appeal, the Court would recommend staying this issue under the *Colorado River* doctrine, which advises a federal court to stay or dismiss a federal suit pending the resolution of a parallel state court proceeding, until the state foreclosure proceeding is complete, and then invoke the *Rooker-Feldman* doctrine. *McDonald* 2014 WL 334813, at *7. Regardless, if the actual purpose of Plaintiff's claim is to attack the completed foreclosure sale of his property, his claim will be barred by the *Rooker-Feldman* doctrine.

11

whose real or personal property" is affected by the alleged spurious lien.[5] The Tenth Circuit has held that "[i]f [a] provision is clear and unambiguous, our inquiry ends and we give effect to the statute's plain language." *United States v. Figueroa-Labrada*, 780 F.3d 1294, 1298 (10th Cir. 2015). Based on this rule of construction, a plaintiff must possess the real or personal property at issue in order to bring a claim under Colo. Rev. Stat. § 38-35-204(1).

Foreclosure proceedings were completed on Plaintiff's property before he brought his claim under Colo. Rev. Stat. § 38-35-204. Defendants argue that the foreclosure proceedings deny Plaintiff standing, because at the time he filed the Amended Complaint, he did not own the property allegedly affected by the spurious lien. While Defendants offer no case law to support this assertion, it is consistent with the plain text reading of Colo. Rev. Stat. § 38-35-204(1) discussed above. Therefore, Plaintiff lacks standing to bring a claim under Colo. Rev. Stat. § 38-35-204, and his claim should be dismissed pursuant to Fed. R. Civ. P. 12(c).

Additionally, Defendants argue that Plaintiff has no standing to challenge the assignment between Chase and Citibank. The United States Bankruptcy Court for the District of New Mexico surveyed the case law in this area and found that "case law is both uniform and abundant ... that a borrower lacks standing to challenge the validity of a loan assignment based on alleged noncompliance with a pooling and servicing agreement ('PSA'), because the borrower is neither a party to the PSA nor a third party beneficiary." *In re Sanford*, Case No. 11-10-14424 TS, 2012 WL 6012785, *3 (Bankr. D. N.M. Dec. 3, 2012) (ellipsis in original). Because Plaintiff has not offered evidence that he was either a party to the PSA or a third-party beneficiary, he does not have standing

---

[5]"Any person whose real or personal property is affected by a recorded or filed lien or document that the person believes is a spurious lien or spurious document may petition the district court in the county or city and county in which the lien or document was recorded or filed or the federal district court in Colorado for an order to show cause why the lien or document should not be declared invalid." Colo. Rev. Stat. § 38-35-204(1).

to challenge the assignment. Therefore, Plaintiff's claim should be dismissed pursuant to Fed. R. Civ. P. 12(c).

## **CONCLUSION**

For the foregoing reasons, because the Court lacks subject matter jurisdiction over Plaintiff's claim and, alternatively, because Plaintiff lacks standing to bring his claim, this Court respectfully recommends that the Defendant's Motion to Dismiss Plaintiff's Amended Complaint [filed July 7, 2015; docket #57] be **granted.**

Entered and dated at Denver, Colorado, this 10th day of September, 2015.

BY THE COURT:

*/s/ Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge